| | | |
|---|---|---|
| **MARTIN MALANOSKI,** | : | |
| | : | **CIVIL ACTION NO.:** |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **CONSUMERS PETROLEUM OF** | : | ***JURY TRIAL DEMANDED*** |
| **CONNECTICUT, INC. and** | : | |
| **WHEELS OF CT, INC.,** | : | |
| | : | **APRIL 30, 2021** |
| **Defendants** | : | |

## COMPLAINT

Plaintiff Martin Malanoski, though his attorneys, Lucas & Varga LLC, for his complaint against defendants Consumers Petroleum of Connecticut, Inc. and Wheels of CT, Inc., hereby alleges as follows:

### *NATURE OF THE ACTION*

This is an action seeking damages and equitable relief arising out of defendants' discriminatory actions during plaintiff's employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*., the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601, et seq., and Connecticut state law. Plaintiff was employed by defendants as their Vice President of Finance. He suffers from clinical depression and sought accommodation at work and to obtain treatment for same, seeking and receiving FMLA leave. Defendant's President viewed plaintiff in a negative light due to his symptoms and her discriminatory perception of people who exhibit such symptoms. When plaintiff exercised his right to take FMLA leave to receive treatment, he was demoted, his duties significantly limited and/or removed, and his

subordinates taken away from his supervision. When he complained of these actions, as well as their impact on his ability to fulfill his role as fiduciary, he was terminated.

***PARTIES***

1.      Plaintiff Martin Malanoski ("Malanoski" and/or "plaintiff") is a 53-year-old male and citizen of the State of Connecticut, currently residing in Stamford, Connecticut. Plaintiff holds a B.S. in Finance. He has a long and successful history in financial services, having held senior executive positions since 1994.

2.      Defendant Consumers Petroleum of Connecticut, Inc. ("Consumers") is a Connecticut corporation, having a place of business in Milford, Connecticut. It is a privately held company and is engaged in the petroleum and petroleum products wholesale industries.

3.      Defendant Wheels of CT, Inc. (d/b/a Wheels Convenience Stores) ("Wheels") is a Connecticut corporation doing business under the name "Wheels Convenience Stores," and having a place of business in Milford, Connecticut. Wheels is a privately-held company, and owns a chain of gas station convenience stores offering fresh foods, bakery, pizza, roller grill, Nathan's, traditional convenience store products and the sale of gas at competitive prices.

4.      Defendant Consumers operates jointly with Wheels (collectively "defendants") and both entities have the same ownership. These two entities share officers and personnel, have centralized human resources, financial, and other primary functions and are run as one firm. They should be viewed as a single employer under the law, and combined have over 200 employees.

***JURISDICTION,***
***VENUE AND ADMINISTRATIVE HISTORY***

5.      Jurisdiction over the subject matter of this litigation exists under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. §1981a, and the FMLA, 29 U.S.C. §2601, *et seq.*, and pursuant to 28 U.S.C. §1343. As to those

claims not arising under federal law but clearly so related to the claims in this action within the original jurisdiction of this Court, jurisdiction exists under the doctrine of supplemental jurisdiction as codified in 28 U.S.C. §1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(1) and (2), as the unlawful conduct complained of herein took place within the District of Connecticut and all parties reside in this District.

7.      Plaintiff timely filed administrative charges of discrimination and retaliation against both defendants with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on or about July 21, 2020 and received Right to Sue letters from the EEOC dated March 4, 2021, as well as Releases to Sue from the CHRO dated March 1, 2021.  Copies of the EEOC releases and the CHRO releases are attached hereto as Exhibits A and B, respectively.

## *ALLEGATIONS*

8.      In March 2015, plaintiff began working for Consumers as its Vice President of Finance. He was also appointed the acting Vice President of Finance for its affiliate, Wheels, which has the same owner.

9.      As Vice President of Finance of Consumers and Wheels, plaintiff reported directly to Christine Hogan ("Hogan"), the President of Consumers and Wheels.

10.      At all times relevant hereto, plaintiff suffered from clinical depression. He informed Hogan of this directly.

11.      Hogan, the President, has a history of difficulty retaining managerial employees, especially in the defendants' financial group. Hogan's conduct has resulted in suits for discrimination, including a suit by a former Chief Financial Officer against Consumers for breach

of FMLA and disability discrimination. As a result of Hogan's often erratic management style, significant staffing issues developed in the defendants' financial group in the summer and fall of 2019. The resulting stress led plaintiff to advise Hogan that her conduct and resultant staff shortage was taking a toll on his mental health. Hogan told plaintiff nothing could be done either to alleviate the staffing or stress issues he felt, or to accommodate his condition.

12.     As the fall of 2019 progressed, Hogan subjected plaintiff to unwarranted criticisms stemming from his mental health symptoms, and also erratically blamed plaintiff for actions she had directed him to take. Plaintiff informed her of his objection to this treatment and again reiterated that her aggressive behavior and the abusive environment she created was contributing to a recurrence and worsening of his depression and accompanying symptoms. He again asked her to modify the harsh treatment she directed toward him.

13.     Hogan had become, and continued to be, very critical of plaintiff when he exhibited symptoms of his mental health condition, such as being withdrawn and less enthusiastic, even though such symptoms did not impair his ability to perform his duties as Vice President of Finance. Indeed, plaintiff at all times continued to perform his job exceptionally well.

14.     In October 2019, when Hogan took no corrective action in response to plaintiff's request to modify her aggressive behavior, plaintiff went directly to Richard Wiehl ("Wiehl"), defendants' owner. Plaintiff told Wiehl of his mental health condition, of Hogan's comments regarding his condition, and of Hogan's failure to accommodate him by, *inter alia*, addressing staffing shortages that were taking their toll on plaintiff's mental health. Wiehl's response was a shrug, stating "that is the way she is," and he urged plaintiff to have patience as nothing could be done.

15.     On information and belief, Wiehl informed Hogan of plaintiff's complaint

referenced in ¶14, above. Rather than working to end the mistreatment, defendants limited plaintiff's duties as a result of his complaints. Plaintiff was told that moving forward he was to focus solely upon the implementation of certain tasks related to the potential sale of the company. Hogan also began to implement a plan to limit plaintiff's authority to run the finance department and, ultimately, to replace him.

16. In December 2019, a temporary worker, William Seres ("Seres"), was hired by Hogan to act as Interim Controller and to perform certain financial functions through the year-end audit. Seres initially reported directly to plaintiff.

17. The continued mistreatment by Hogan, combined with the stress of her removal of many of plaintiff's duties, as well as the apparent squeeze being put on plaintiff by Ms. Hogan's hiring of Seres, negatively affected plaintiff's mental health. Hogan openly expressed frustration and anger with plaintiff's symptoms. She claimed plaintiff should no longer have management responsibility. Although plaintiff continued to perform his remaining duties, in early December 2019, Hogan asked plaintiff whether he wanted to remain employed and suggested he may want to leave at year-end. Hogan continued to express frustration with plaintiff's depression and even asked him not to come into the office. Hogan suggested that perhaps plaintiff should resign.

18. Plaintiff then sought FMLA leave in order to receive treatment for his mental health condition, which had worsened subsequent to the registration of his complaints with Hogan and Wiehl and the continued mistreatment he endured. This leave was granted and ran from February 17 to February 27, 2020.

19. On information and belief, while plaintiff was out on FMLA leave, Hogan informed Seres of the reason for plaintiff's requested leave and of plaintiff's mental health condition.

20. Upon plaintiff's return from FMLA leave, Hogan informed plaintiff that he would

not be returned to his same duties, but that instead, Seres would now be reporting directly to Hogan in his role as acting Controller and would be managing many of the functions plaintiff had handled prior to his leave. Hogan informed plaintiff he was not to interact with his accounting staff, nor was he to be involved in the review or verification of the accounting results. Hogan told plaintiff all of his questions and inquiries now had to go directly through her. When plaintiff protested, he was told by Hogan her mind was made up, and that plaintiff had been "very negative." When plaintiff queried what this referenced, Hogan responded "[y]ou know how you are." Hogan further said plaintiff needed to accept this and that the reassignment of duties was effective immediately.

21.     Plaintiff learned from other employees that, during his absence on FMLA leave, Hogan had hired Seres as a full-time Consumers employee with the official title of Controller and was no longer a consultant.

22.     Hogan removed plaintiff's control over his department and gave those duties to Seres. Hogan told plaintiff to focus solely upon getting Consumers' finances suitably packaged for the potential marketing of Consumers' sale to a third party.

23.     A few days later, Hogan went into plaintiff's office and asked if plaintiff had made a decision to accept the changes and remain employed, or to leave. Plaintiff told Hogan that his nightly intensive therapy and the modification to his medication was making it difficult for him to process the changes and that a job description would assist in making his determination.  Hogan said that she would inform Tom Wiehl ("T. Wiehl"), Wiehl's son and the head of defendants' Human Resources, who would modify plaintiff's job description.  Plaintiff reiterated that he had worked five years for the company, and that he had always done what was requested.  Plaintiff further reiterated that over the preceding six months, the lack of resources to implement a new ERP system, the staffing issues with accounting, and Hogan's mistreatment, had taken its toll on

his mental health. Plaintiff again suggested it best to delay the implementation of the changes in his duties, and Hogan said "no." Hogan pressured plaintiff to make a decision whether to accept things as they are or leave immediately, but then relented when plaintiff said that he felt uncomfortable without a job description or having HR present.

24.     Plaintiff next called T. Wiehl and asked if Hogan had informed him that plaintiff wanted to see his new job description, and T. Wiehl stated to plaintiff that Hogan had not. No job description was ever provided.

25.     During mid-March of 2020, the pandemic started, and plaintiff performed all of the work associated with the Paycheck Protection Program. As part of the submittal, plaintiff went through the payroll records for the entire company for the preceding 18 months. In the course of establishing the applicable metrics, plaintiff uncovered that Seres had been converted to an employee at a salary of approximately $165,000 annually, which was close to plaintiff's salary and in excess of any controller salary (upper limit of $125,000) that Hogan had discussed when the previous controller (who was making $90,000) resigned. Plaintiff conferred with T. Wiehl, and he stated that Hogan was supposed to have told plaintiff.

26.     Plaintiff was placed in the untenable position of being asked to certify financials he no longer controlled, and which were based on information to which he now had incomplete access due to Hogan's removal of his duties, his supervisory responsibilities, and his access to certain books and records. Plaintiff learned that the employees in the finance group had in fact been instructed by Hogan not to ask him questions or to even seek his guidance or advice. In other words, plaintiff was isolated with very few duties, had only limited access to necessary information, and set up as the fall guy for any accounting issues for which he technically remained "responsible."

27.     During the first week of May 2020, T. Wiehl resigned and left the company, leaving plaintiff with no Human Resources department to address and respond to complaints. When plaintiff discussed this with Hogan, she informed plaintiff that she would now be the person handling Human Resources for the defendants.

28.     During the week of May 15, 2020, Hogan informed plaintiff that she planned to terminate an employee in the finance group and that her plan had been to hire a temporary worker, have the employee train that worker, then fire the employee and hire the temporary worker.

29.     In May 2020, realizing Hogan had implemented this same strategy with him, and that he no longer had the requisite authority required to ethically perform, and to fulfill, the duties of his position, but still had continuing accountability to third parties for sworn representations and certifications he was being forced to make, plaintiff informed Hogan he could not accept the ongoing situation without change. He stated to Hogan he could not certify financial records he could not verify, and that he needed the restoration of his access and supervisory responsibilities, or he would be forced to leave as he could not fulfill his fiduciary duties as required by law.

30.     In response to conveying the foregoing concerns to Hogan, Hogan told plaintiff to stop being difficult and then asked about his treatment and if his medication adjustment was working.

31.     Hogan instructed plaintiff to review Seres' work. Plaintiff did so and informed Hogan that Seres' work had not been in compliance with Generally Accepted Accounting Principles (GAAP). Hogan demanded plaintiff direct Seres on how to fix the issues.

32.     Seres did not initially cooperate with plaintiff, but eventually sent plaintiff his responses to comments plaintiff had made. Seres insisted there were no errors and that no corrections were needed. As Seres reported now to Hogan and not to plaintiff, plaintiff informed

Hogan, who had previously insisted all communications go through her.

33. Hogan refused to intercede and began to insist that plaintiff simply certify the company financials. Plaintiff attempted to correct the various accounting issues he was able to uncover, but told Hogan he had been placed in an untenable position where he had no access to, or power over, the financials, their back-up, or their validity. On May 20, 2020, plaintiff informed Hogan he was unable to continue with the way things were, that his anxiety was worse and ethically he could not certify the financials without greater access and authority. Hogan indicated she was accepting plaintiff's "resignation," and thereafter shut off completely plaintiff's access to company books, records and emails. Accordingly, plaintiff's employment with Consumers involuntarily terminated abruptly on May 20, 2020.

### ***FIRST COUNT***

### ***(42 U.S.C. 12101, et seq. (ADA) - Discrimination)***

34. Plaintiff hereby repeats and realleges paragraphs 1 through 33 as if more fully set forth herein.

35. Plaintiff was discriminated against on the basis of his mental health and disability, and retaliated against for complaining. Plaintiff was also discriminated and retaliated against for seeking an accommodation and receiving leave.

36. Plaintiff is an individual with a "disability" as that term is defined in the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102. More specifically, because of his condition, plaintiff has: (a) a physical and/or neurological impairment that substantially limits one or more of his major life activities; and/or (b) is regarded by defendants as having such impairment.

37. Plaintiff is a qualified individual with a disability within the meaning of §101(8) of the ADA, 42 U.S.C. §12111(8), in that plaintiff is an individual with a disability, who, with or

without reasonable accommodation, can perform the essential functions of his former position with defendants.

38.     Defendants' treatment of plaintiff is in violation of §102 of the ADA, 42 U.S.C. §12112, which prohibits discrimination on the basis of disability.

39.     Defendants have discriminated against plaintiff with respect to the terms, conditions, or provisions of employment because of plaintiff's disability.

40.     Plaintiff was discriminatorily terminated because of his condition which did not prevent plaintiff from performing the essential functions of his position and which defendants were unwilling to accommodate in violation of the ADA.

41.     Defendants' discriminatory conduct as to the plaintiff was taken with malice and with reckless indifference to plaintiff's federally-protected rights.

42.     As a direct and proximate result of defendants' discrimination, plaintiff has been deprived of economic benefits, including, but not limited to, salary and fringe benefits.

43.     As a result of defendants' treatment of plaintiff, plaintiff has suffered and will continue to suffer past and future economic, physical, and emotional harm.

### *SECOND COUNT*

### *(C.G.S. §46a-60(a) – Unlawful Discrimination)*

44.     Plaintiff hereby repeats and realleges paragraphs 1 through 43 of the First Count as if more fully set forth herein.

45.     Plaintiff was at all times relevant hereto an "employee" as that term is defined in Connecticut General Statutes §46a-51(9).

46.     Each of the defendants is an "employer" as that term is defined in Connecticut General Statutes §46a-51(10).

47.     At all relevant times hereto, defendants employed more than three persons.

48.     Defendants' conduct, by and through their agents, in treating plaintiff in the manner stated, discriminatorily denied plaintiff equal treatment on the basis of his mental disability in violation of Connecticut General Statutes §46a-60(a).

49.     As a result of defendants' conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

### *THIRD COUNT*

### *(42 U.S.C. § 12203 (ADA) – Interference)*

50.     Plaintiff hereby repeats and realleges paragraphs 1 through 43 of the First Count as if more fully set forth herein.

51.     Defendants' actions interfered with plaintiff's rights in violation of the ADA, 42 U.S.C. §12203(b).

52.     As a result of defendants' conduct, plaintiff has suffered and will continue to suffer past and future economic harm.

### *FOURTH COUNT*

### *(42 U.S.C. §12203(a) (ADA) - Retaliation)*

53.     Plaintiff hereby repeats and realleges paragraphs 1 through 43 of the First Count of as if more fully set forth herein.

54.     The actions of defendants were taken in retaliation for plaintiff's efforts to protect his rights in violation of the ADA, 42 U.S.C. §12203(a).

55.     Defendants' retaliatory conduct as to plaintiff was taken with malice and with reckless indifference to the federally-protected rights of plaintiff.

56.     As a direct and proximate result of defendants' retaliation, plaintiff has been deprived of economic benefits, including, but not limited to, salary, other compensation, and fringe benefits.

57.     As a result of defendants' conduct, plaintiff has suffered and will continue to suffer past and future economic and emotional harm.

### FIFTH COUNT

### (C.G.S. §46a-60(b)(4) (CFEPA) - Retaliation)

58.     Plaintiff hereby repeats and realleges paragraphs 1 through 49 of the Second Count of as if more fully set forth herein.

59.     The actions of defendants were taken in retaliation for plaintiff's efforts to protect his rights in violation of Connecticut General Statutes §46a-60(b)(4).

60.     As a result of defendants' conduct, plaintiff has suffered and will continue to suffer past and future economic and emotional harm.

### SIXTH COUNT

### (29 U.S.C. §2615(a) (FMLA) – Interference with Rights)

61.     Plaintiff hereby repeats and realleges paragraphs 1 through 33 as if more fully set forth herein.

62.     Hogan did not look favorably upon plaintiff's FMLA leave and that leave formed, in part, the basis of her decision to relieve plaintiff of the balance of his managerial duties upon his return from FMLA leave, and the hiring of the Controller to do many of plaintiff's functions on a full-time basis.

63.     Plaintiff is an "eligible employee" as defined by 29 U.S.C. §2611(2).

64. Plaintiff had worked for more than 1,250 hours in the 12 months preceding his request for medical leave.

65. Defendants are each an "employer" as defined by 29 U.S.C. §2611(4).

66. Defendants, at all times relevant hereto, have employed more than 50 employees.

67. Plaintiff's leave from February 17, 2020 to February 27, 2020 constituted protected leave under the FMLA, 29 U.S.C. §2612(a)(1), *et seq*.

68. Defendants' conduct, by and through their agents, interfered with and restrained the exercise of plaintiff's rights in violation of the FMLA, 29 U.S.C. §2615(a).

69. Defendants' termination of plaintiff constitutes negligent and/or willful interference with, and restraint upon, plaintiff's exercise of his rights in violation of the FMLA, 29 U.S.C. §2615(a).

70. As a result of defendants' conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## ***SEVENTH COUNT***

### *(29 U.S.C. §2615(a) (FMLA) – Retaliation)*

71. Plaintiff hereby repeats and realleges paragraphs 1 through 70 of the Sixth Count as if more fully set forth herein.

72. Defendants' conduct, by and through their agents, caused plaintiff to suffer adverse employment actions, including termination, in retaliation for plaintiff's exercise of his rights under the FMLA, 29 U.S.C. §2615(a). Specifically, plaintiff suffered termination in response to his exercise of those rights.

73. As a result of defendants' conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## *EIGHTH COUNT*

### *(C.G.S. §§33-765 and 33-1333 – Violation of Public Policy)*

74.     Plaintiff hereby repeats and realleges paragraphs 1 through 33 as if more fully set forth herein.

75.     Defendants terminated plaintiff's employment in part because he insisted that he, a Vice President of Finance, have sufficient access to defendants' books and records and supporting documentation, and the employees who prepared same, to ensure the financial books and records fairly represented, in all material respects, the defendants' financial conditions and results of operation as required by Connecticut law (Connecticut General Statutes §33-1333), such that he could perform his duties as required and such that other officers could rely on those financial books and records as required (Connecticut General Statutes §33-765), and otherwise to fulfill his fiduciary duties.

76.     Plaintiff's termination was wrongful in that defendants violated the implied covenant of good faith and fair dealing inherent in every employer/employee relationship and the public policy requiring an employer to allow its financial officers to adhere to the law controlling certification of its financial records and performance of his or her duties in connection with same as set forth in Connecticut General Statutes §§33-765 and 33-1333 without the insistence of adherence to same forming a basis for termination.

77.     Accordingly, plaintiff's termination violates the public policy of the State of Connecticut embodied in Connecticut General Statutes §§33-765 and 33-1333.

78.     The discharge caused plaintiff to suffer damages, including loss of income, emotional pain and suffering, humiliation, disgrace, damage to reputation and loss of self-esteem.

## NINTH COUNT

### *(Negligent Infliction of Emotional Distress)*

79.     Plaintiff hereby repeats and realleges paragraphs 1 through 78 of the Eighth Count as if more fully set forth herein.

80.     The conduct of defendants was unreasonable, inconsiderate and intended to cause plaintiff undue stress, humiliation, and embarrassment and to harm his career.

81.     Defendants engaged in this unreasonable conduct during the course of plaintiff's employment termination process.

82.     Defendants knew or should have known that the conduct as hereinabove recited involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily harm to plaintiff.

83.     As a result of the foregoing conduct by defendants, plaintiff has suffered emotional distress and will continue to suffer past and future economic, physical and emotional harm.

**WHEREFORE**, plaintiff is seeking:

1. Statutory damages for lost wages, benefits, and other compensation, plus interest at the statutory rate, pursuant to the FMLA, 29 U.S.C. §2617(a)(1)(A);

2. Liquidated damages pursuant to the FMLA, 29 U.S.C. §2617(a)(1)(A);

3. Equitable relief in the form of reinstatement or front pay, as considered appropriate by the Court, pursuant to the FMLA, 29 U.S.C. §2617(a)(1)(B);

4. Attorneys' fees, expert witness fees, and costs of this action pursuant to the FMLA, 29 U.S.C. §2617(a)(3);

5. Compensatory damages, including loss of enjoyment of life, emotional pain and suffering, back pay, bonuses, and the value of all other employment benefits in an amount to be determined by the trier of fact, with interest from the date when said sums were due;

6. Compensatory, punitive damages and fees under (a) the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, as provided in 42 U.S.C. §1981a(b), and/or (b) CFEPA, Connecticut General States §46a-60, as provided in Connecticut General Statues §§46a-58(a) and 46a-104;

7. Punitive damages;

8. Attorney's fees;

9. Prejudgment interest and costs;

10. An injunction permanently enjoining the defendants, their agents, employees, successors, assigns and all persons who acted in concert and participation with defendants, from engaging in any employment practice which discriminates on the basis of disability; and

11. Such other and further relief as this Court shall deem just and proper.

The plaintiff demands a trial by jury on all counts.

**PLAINTIFF**
**MARTIN MALANOSKI**


By_____/s/ Scott R. Lucas_____
    Scott R. Lucas, Esq. (ct00517)
    Lucas & Varga LLC
    2425 Post Road, Suite 200
    Southport, CT 06890
    Phone: (203) 227-8400
    Fax: (203) 227-8402
    slucas@lucasvargalaw.com

# EXHIBIT A

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Martin Malanoski**
**22 Blackberry Drive East**
**Stamford, CT 06903**

From:  **Boston Area Office**
**John F. Kennedy Fed Bldg**
**15 New Sudbury Street, Room 475**
**Boston, MA 02203**

|  | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2020-01386** | **Amon L. Kinsey, Jr.,**<br>**Supervisory Investigator** | **(617) 865-3672** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X]  Other *(briefly state)*   **Charging Party is pursuing claims in another forum.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Feng K. An,**
**Area Office Director**

March 4, 2021

*(Date Issued)*

Enclosures(s)

cc:

**CONSUMER PETROLEUM OF CT INC**
**497 Bic Drive**
**Milford, CT 06461**

**Scott R. Lucas, Esq.**
**Lucas & Varga LLC**
**2425 Post Road, Suite 200**
**Southport, CT 06890**

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Martin Malanoski**<br>**22 Blackberry Drive East**<br>**Stamford, CT 06903** | From: **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**15 New Sudbury Street, Room 475**<br>**Boston, MA 02203** |

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2020-01387** | **Amon L. Kinsey, Jr.,**<br>**Supervisory Investigator** | **(617) 865-3672** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

- [ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

- [ ] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

- [ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

- [X] Other *(briefly state)*          **Charging Party is pursuing claims in another forum.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*                                                        March 4, 2021

| | |
|---|---|
| Enclosures(s) | **Feng K. An,**<br>**Area Office Director** |     *(Date Issued)* |

cc:

**WHEELS OF CT INC**
**497 Bic Drive**
**Milford, CT 06461**

Scott R. Lucas, Esq.
Lucas & Varga LLC
2425 Post Road, Suite 200
Southport, CT 06890

**EXHIBIT B**

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Martin Malanoski
**COMPLAINANT**

CHRO No. 2130046

vs.

EEOC No. 16A-2020-01386

Consumer Petroleum of CT
**RESPONDENT**

## <u>RELEASE OF JURISDICTION</u>

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

**DATE:** March 1, 2021

Tanya A. Hughes, Executive Director

Service:
Complainant's counsel: slucas@lucasvargalaw.com
Respondent's counsel: will.ruggiero@ogletree.com

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Martin Malanoski
**COMPLAINANT**                                    CHRO No. 2130047

vs.                                                EEOC No. 16A-2020-01387

Wheels of CT
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** March 1, 2021                             Tanya A. Hughes, Executive Director

Service:
Complainant's counsel: slucas@lucasvargalaw.com
Respondent's counsel:  will.ruggiero@ogletree.com

.