IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARTIN MALANOSKI, | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 3:21-cv-00595-VLB |
| CONSUMERS PETROLEUM OF CONNECTICUT, INC., ET AL., | : | |
| Defendants. | : | June 25, 2021 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SIXTH, SEVENTH, AND NINTH COUNTS OF THE COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Consumers Petroleum of Connecticut, Inc., ("Consumers") and Wheels of CT, Inc. ("Wheels") (collectively "Defendants") hereby seek dismissal of the Sixth and Seventh Counts of Martin Malanoski's ("Plaintiff'") Complaint -- alleging interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), respectively -- as well as the Ninth Count alleging Negligent Infliction of Emotional Distress ("NIED"). Each of these counts fails to state a plausible claim for relief, and should be dismissed.[1]

## INTRODUCTION

Plaintiff resigned his position as Consumers' Vice President of Finance on or about May 20, 2020. His resignation occurred approximately three months after his return to work from a brief, ten-day leave of absence taken pursuant to the FMLA to treat for alleged depression. Not even Plaintiff believes his resignation

---

[1] The Complaint contains nine counts. Plaintiff also advances claims of disability discrimination and retaliation pursuant to the Americans with Disabilities Act and Connecticut Fair Employment Practices Act (Counts One through Five), as well as a claim for wrongful termination in violation of Connecticut Public Policy (Count Eight). These claim are not subject to this Motion to Dismiss.

1

was related to his use of FMLA. Rather, he alleges vaguely that he resigned because he was uncomfortable "certifying" Consumers' "financials."

Even accepting Plaintiff's allegations as true, Counts Six, Seven, and Nine fail to state plausible claims for relief. Concerning Count Six, in order to state a viable claim for FMLA interference, Plaintiff must allege he was denied benefits under the FMLA. Plaintiff has not (and cannot) allege Defendants denied him any FMLA benefits. Rather, and again, Plaintiff requested and was granted a ten-day FMLA leave of absence. Plaintiff does not allege he sought and was denied any additional FMLA leave or benefits. Absent these necessary allegations, the Complaint fails to state a plausible claim for FMLA interference and the Sixth Count should be dismissed.

Count Seven should also be dismissed because the Complaint lacks any plausible, non-conclusory factual allegations suggesting Defendants held any retaliatory animus towards Plaintiff for taking FMLA leave, or that any adverse employment actions were otherwise causally connected to Plaintiff's use of FMLA leave. Plaintiff left his employment with Consumers three months after returning from an approved FMLA leave of absence. He left due to his purported disagreement with information in Consumer's "financials," which, again, is unrelated to his use of FMLA leave. The three month gap between Plaintiff's FMLA leave, and his separation cuts heavily against any inference that the two were causally connected. The Complaint also lacks allegations of comments, or other evidence suggesting Defendants held animus towards Plaintiff for taking a short leave of absence. Furthermore, any alleged changes to Plaintiff's duties predate

his use of FMLA, and therefore cannot be relied on as evidence of retaliation. The Seventh Count is fails to state a viable claim, and should be dismissed.

Finally, in the employment context, NIED claims are reserved exclusively for negligent conduct during the actual termination process. Specifically, a former employee advancing the NIED claim must allege that the actual act of discharge was done in an inconsiderate, humiliating or embarrassing manner. The Complaint barely describes the alleged termination process, and does not contain allegations establishing that Plaintiff's separation was conducted in a particularly embarrassing, inconsiderate or humiliating manner. Therefore, Plaintiff fails to state a claim for NIED and this Court should dismiss the Ninth Count.

## RELEVANT ALLEGATIONS

Defendants are involved in the petroleum and petroleum products industry. *See* Doc. No. 1 ("Compl."), ¶¶ 2-3. At all times relevant to the Complaint, Wheels operated a network of gas and service stations across the State of Connecticut, and in New York. *Id.*, ¶ 3. Consumers was a privately held wholesale distributor of branded petroleum products serving retailers in Connecticut, New York, and New Jersey. *Id.*, ¶ 4.

According to the Complaint, in or around March of 2015, Plaintiff began working for Consumers as its Vice President of Finance. *Id.*, ¶ 8. In this role, Plaintiff reported to Consumers' President, Christine Hogan. *Id.*, ¶ 3. Plaintiff alleges he has clinical depression, and informed Ms. Hogan his depression around the time he was hired by Consumers. *Id.*, ¶ 10.

According to Plaintiff, Consumer's "financial group" was understaffed, and Plaintiff felt overworked. *Id.*, ¶ 11. Plaintiff states that sometime in "summer and fall of 2019" he informed Ms. Hogan that he was overworked and stressed, and that the staffing shortage was "taking a toll on his mental health." *Id.* According to Plaintiff, Ms. Hogan informed him that there was nothing that could be done about the staffing levels. *Id.*[2]

Plaintiff alleges he was subject to "unwarranted criticism" in the "fall of 2019," although he does not describe the alleged criticism with any specificity. *Id.*, ¶¶ 12-13. Plaintiff further alleges that in October of 2019, he reached out to Defendants' owner, Richard Wiehl, to report Ms. Hogan's alleged "aggressive behavior," and to see whether Mr. Wiehl would intervene in relation to the "staffing shortages," but that Mr. Wiehl did not intervene. *Id.*, ¶ 14.

According to the Complaint, in late 2019, Mr. Wiehl began exploring the possibility of selling the Defendants' assets. *Id.*, ¶ 15. Around that time, Ms. Hogan requested that Plaintiff prioritize duties relating to the potential sale. *Id.* In December of 2019, Consumers retained Mr. Seres as Controller to assist with finance-related functions. *Id.*, ¶ 16.

Plaintiff alleges he was overwhelmed and stressed by his workload. As such, he requested and was granted a FMLA leave of absence between February 17, 2020 and February 27, 2020, so that he could "receive treatment" for his mental health. *Id.*, ¶ 18. Plaintiff states he returned to work following his FMLA leave, and was

---

[2] Plaintiff's allegation that Ms. Hogan stated "nothing could be done" about the alleged staffing shortages is contradicted by the fact that, according to the Complaint, Consumer's retained Bill Seres as Controller in late 2019 to help lessen Plaintiff's workload. *See* Compl. ¶ 16.

4

once again instructed "to focus … upon getting Consumer's finances suitably packaged for the potential marketing of Consumer's sale to a third party." *Id.*, ¶ 22.

According to Plaintiff, given that he was focused on trying to prepare for a potential sale, he had less access to Consumer's "financials." *Id.*, ¶ 23. As such, he did not feel comfortable making "sworn representations and certifications," and felt unable to "certify financial records…." *Id.*, ¶ 29. Plaintiff does not allege what "financials" he was uncomfortable certifying, nor does he provide any information concerning what he felt was inaccurate in the "financials." *See id.*, ¶ 29-33.

Plaintiff alleges that after conferring with Mr. Seres and Ms. Hogan, he remained uncomfortable "certifying financials," and therefore left his employment effective May 20, 2020 – 83 days after he returned from his FMLA leave. *Id.*, ¶ 33. Although Plaintiff describes his resignation as a "termination," he provides few details concerning the manner in which he was allegedly terminated.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough factual allegations which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 547. In assessing a Rule 12(b)(6) motion, courts are not required to take Plaintiff's legal conclusions as true. *Id.* at 555.

Only a complaint that states a plausible claim for relief can survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint that offers no more than "labels and conclusions," or a "formulaic recitation of the

elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement," is insufficient to survive a motion to dismiss and must be dismissed. *Bell Atlantic,* 550 U.S. at 555. Thus, a motion to dismiss under Rule 12(b)(6) should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

## LAW AND ARGUMENT

**I.**  **The Sixth Count fails to state a plausible claim for FMLA Interference.**

The FMLA entitles eligible employees to twelve workweeks per year of unpaid leave, because of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D)). Section 2615(a)(1) of the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

To state a viable claim of interference under the FMLA, Plaintiff must plead facts establishing that: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he gave notice to the defendant of her intention to take leave; and (5) he was denied benefits to which she was entitled under the FMLA. *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016). "Purported interference with FMLA rights must ultimately result in the denial of a benefit under the FMLA." *Fernandez v. Windmill Distrib. Co.,* 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016)

6

(granting motion to dismiss, where plaintiff failed to plead he was ever denied FMLA leave based on the alleged interference.)

Here, according to Plaintiff, he requested and was granted a FMLA leave of absence from February 17, 2020 through February 27, 2020. *See* Compl., ¶ 18. Plaintiff does not allege he required additional time off from work due to a FMLA-qualifying serious health condition, nor does he allege that he sought and was denied additional leave. Simply stated, the Complaint lacks any factual allegations suggesting Plaintiff was denied any rights or benefits under the FMLA. *See Nagle v. E. Greenbush Cent. Sch. Dist.*, No. 116CV00214BKSATB, 2018 WL 4214362, at *17 (N.D.N.Y. Feb. 21, 2018) (granting motion to dismiss, because "there is no dispute that Plaintiff received all her FMLA benefits, [and] Plaintiff cannot establish the fifth element of her FMLA interference claims. Therefore, her FMLA interference claim fails as a matter of law.") In fact, the Complaint established Plaintiff received all of the leave he required or requested. See *Concepcion v. Continuum of Care,* No. 3:17-CV-1854 (VLB), 2018 WL 6529178, at *7 (D. Conn. Dec. 12, 2018) (granting motion to dismiss FMLA inference claim because, as alleged in the Complaint, the plaintiff was granted all of the leave she requested.) [3] The Sixth Count should be dismissed.

---

[3] *See also Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 22 (D. Conn. 2018). ("In short, in an interference claim, the result must be that the employer denies the employee benefits under the FMLA."); *Sacco v. Legg Mason Inv. Counsel & Trust Co., N.A.,* 660 F.Supp.2d 302, 316 (D.Conn.2009) (holding that "there was no actual 'interference' with [plaintiff's] FMLA rights …."); *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 183, 194 (S.D.N.Y. 2011) (dismissing an FMLA interference claim where the plaintiff failed to satisfactorily allege either that he gave his employer notice of an intention to take FMLA leave, or that any such request was denied); *Ross v. State of New York*, No. 15-CV-3286 (JPO), 2016 WL 626561, at *8 (S.D.N.Y. Feb. 16, 2016) (dismissing an FMLA interference claim because Plaintiff failed to allege facts showing that he suffered from a serious medical condition or was denied leave.)

## II. The Seventh Count fails to state a plausible claim for FMLA Retaliation.

Plaintiff's FMLA retaliation claims are analyzed under a variation of the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973). *See McNamara v. Trinity Coll.*, No. 3:12CV363 JBA, 2013 WL 164221, at *1 (D. Conn. Jan. 15, 2013). Applying that framework, in order to plead a plausible *prima facie* case for retaliation under the FMLA, Plaintiff must advance factual allegations suggesting that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006).

The Complaint is devoid of factual allegations suggesting Plaintiff's separation occurred under circumstances giving rise to an inference of retaliation.[4] Among other flaws, the Complaint lacks factual allegations suggesting Defendants held retaliatory animus towards Plaintiff for taking a short, ten-day FMLA leave of absence, or that any adverse employment actions are causally connected to Plaintiff's FMLA leave of absence. For example, Plaintiff fails to alleged comments suggesting animus towards Plaintiff for using FMLA leave, and instead relies on speculation and conclusory allegations to support the claim, which is insufficient to survive a motion to dismiss. *See Schupbach v. Shinseki, 905 F. Supp. 2d 422,*

---

[4] For the purposes of this motion, Defendants are not challenging whether Plaintiff's separation qualifies as an adverse employment action. However, the facts will show that Plaintiff voluntarily resigned, and Defendants reserve the right to raise Plaintiff's failure to establish he was subject to an adverse employment action later on in these proceedings, including on summary judgment.

8

437 (E.D.N.Y. 2012) ("[P]laintiff cannot simply substitute utter speculation for the competent proof that would be necessary to permit rational inferences by a jury of discrimination or retaliation."); *Mathew v. N. Shore-Long Island Jewish Health Sys., Inc.,* 582 F. App'x 70, 71 (2d Cir. 2014) (*holding* that Plaintiff's did not make out a *prima facie* case of FMLA retaliation because he relied on speculation to substantiate his allegations of retaliatory intent.)

Again, Plaintiff alleges his employment ended following a disagreement about Consumer's financial statements. This is unrelated to Plaintiff's use of FMLA leave, and there is no allegation that Ms. Hogan (or anyone associated with Defendants) mentioned or discussed Plaintiff's FMLA leave in the days, weeks, or even months leading to his separation. *See Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 365 (S.D.N.Y. 2016) ("And while the two-month gap between Fernandez's return to work and the termination of his employment is not fatal to his claim, Fernandez pleads no facts giving rise to retaliatory intent during that two month period, during which time Fernandez was permitted to work as usual. Nor has Fernandez specified that any of his protests of Windmill's allegedly unlawful FMLA practices actually led to his firing.")

Relatedly, the passage of three months between Plaintiff's use of FMLA leave from February 17, 2020 and February 27, 2020 and his May 20, 2020 separation cuts against any inference that the two events were causally connected. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 431 (2d Cir.2016) (concluding that, among other things, the "very close temporal proximity" between an employee's FMLA leave and her termination permitted the conclusion that the employer's decision

was based on the FMLA leave.); *Doner-Hedrick v. N.Y. Inst. of Tech.*, 874 F. Supp. 2d 227, 246 (S.D.N.Y. 2012) (explaining that generally, periods of time greater than two months between the exercise of Plaintiff's protected right and the allegedly adverse employment action defeat an inference of causation.) The lack of temporal proximity between Plaintiff's use of leave and separation, standing alone, warrants dismissal of the claims.

Finally, Plaintiff cannot rely on the hiring of Mr. Seres, or alleged modifications to his duties to focus on the sale of Defendants' assets, to support a FMLA retaliation claim. All of these occurrences predate Plaintiff's request for FMLA leave. *See* Compl., ¶ 15 (stating that in or around October of 2019, "Plaintiff was told that moving forward he was to focus solely upon the implementation of certain tasks related to the potential sale of the company. Hogan also began to implement a plan to limit plaintiff's authority to run the finance department and, ultimately, to replace him.") In fact, it was the hiring of Mr. Seres, the alleged stress and scrutiny from Ms. Hogan, and the alleged changes in Plaintiff's duties that Plaintiff claims led to his decision to seek a FMLA leave of absence to pursue mental health treatment. Since these alleged actions predate Plaintiff's exercise of rights under the FMLA, it impossible for them to have been motivated by retaliatory animus. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (*explaining* "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Elliot-Leach v. New York City Dep't of Educ.*, 710 F. App'x 449, 452 (2d Cir. 2017) (affirming the dismissal

of Plaintiff's FMLA retaliation claims because she was disciplined for work absences before she requested FMLA leave, and relies only on temporal proximity to suggest retaliatory intent.) The Court should dismiss the Seventh Count.

III. **The Ninth Count fails to state a plausible claim for Negligent Infliction of Emotional Distress.**

To prevail on his NIED claim, Plaintiff must allege facts demonstrating "that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily harm, and, finally, that the defendant's conduct was the cause of the plaintiff's distress." *Olson v. Bristol-Burlington Health Dist.,* 87 Conn. App. 1, 5 (2005). In the employment context, "negligent infliction of emotional distress . . . arises only where it is based upon unreasonable conduct of the defendant in the termination process." *See Parsons v. United Technologies Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88 (1997); *see also Ravenscroft v. Williams Scotsman, Inc.*, 2015 WL 1311332 *6-7 (D. Conn. Mar. 23, 2015) ("a NIED claim is limited to an employer's conduct during termination….")

As such, a former employee advancing a NIED claim must allege that his "actual discharge was done in an inconsiderate, humiliating or embarrassing manner." *Copeland v. Home and Cmty. Health Servs., Inc.*, 285 F. Supp. 2d 144, 152 (D. Conn. 2003) (reviewing Connecticut cases). It is insufficient to simply allege that the termination was "wrongful" or "wrongfully motivated." *Parsons,* 243 Conn. 66, 88-89 ("[t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully

motivated, does not transgress the bounds of socially tolerable behavior"). The focus is on the actual act of discharge, and whether or not it was conducted in an inconsiderate, humiliating or embarrassing manner. *Id.*

In *Drozdowski v. Smile Sensations*, LLC, No. FSTCV126014629S, 2013 WL 3958244, at *5 (Conn. Super. Ct. July 9, 2013), the plaintiff brought a claim for NIED based on her termination following an assault by a coworker. The court dismissed the claim for failure to state a claim upon which relief can be granted, recognizing that "[i]mplicit in [the NIED] analysis is that the mere act of termination, inherently likely to be stressful, is not sufficient to support a cause of action." *Id.* The court further reasoned that:

> In this case, there was little if any process. Plaintiff told her employer that she intended to pursue her legal rights; her employer told her that if she did, she would be fired; plaintiff insisted that she would pursue her rights; plaintiff was fired.

*Id.*; *see also Benedict v. Cheese Cake Factory*, No. CV156052525S, 2016 WL 2890439, at *5 (Conn. Super. Ct. Apr. 21, 2016) (dismissing NIED claim, because "[t]here is nothing alleged in the complaint which states or implies that the termination was handled in any way which was humiliating, cruel or inconsiderate."); *Thomas v. Saint Francis Hosp. & Med. Ctr.*, 990 F. Supp. 81, 83-84, (1998), (dismissing NIED claim because the plaintiff did not allege that any unreasonable conduct on the day of her actual termination, despite other allegations of alleged race discrimination during the ongoing employment relationship.); *Cooper v. Dick's Clothing & Sporting Goods*, 25 F. Supp. 2d 59, 60 (1998) (allegations of public accusations of stealing merchandise insufficient to

12

state NIED claim, because the plaintiff did not allege sufficiently egregious conduct engaged in by the defendant's agents *during* the termination process.)

Here, again, although Plaintiff attempts to characterize his resignation as a termination, he barely described the alleged termination/resignation process. Rather, he states generally that he expressed disagreement over performing duties relating to Consumer's financial statements, and that Ms. Hogan responded that she was accepting his resignation. The Complaint does not contain allegations establishing that Plaintiff's separation was conducted in a particularly embarrassing, inconsiderate or humiliating manner. Therefore, Plaintiff fails to state a claim for NIED and this Court should dismiss the Ninth Count.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant their Motion to Dismiss Counts Six, Seven, and Nine of the Complaint.

**Respectfully submitted,**

 **/s/ William C. Ruggiero**
**William C. Ruggiero (ct29248)**
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
**Two Stamford Plaza**
**281 Tresser Boulevard, Suite 602**
**Stamford, Connecticut  06901-3284**
**203.969.3112 (Phone)**
**203.969.3150 (Fax)**
**will.ruggiero@ogletree.com**

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          */s/ William C. Ruggiero*
                                          William C. Ruggiero

47620537.1

14